UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

 

No. 97-1269

 LYNNE WOODS-LEBER AND ANTHONY LEBER,

 Plaintiffs, Appellants,

 v.

 HYATT HOTELS OF PUERTO RICO, INC., ETC.,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Daniel R. Dominguez, United States District Judge] 

 

 Before

 Selya, Circuit Judge, 

 Gibson,* Senior Circuit Judge, 

 and Lynch, Circuit Judge. 

 

 Iv n D az-L pez and Gerardo A. Quir s-L pez, with whom Law 
Offices of Gerardo A. Quir s-L pez, P.S.C., were on brief, for 
appellants.
 Hector F. Oliveras, with whom Luis Ram n Ortiz-Segura was on 
brief, for appellee.

 

 August 26, 1997
 

 
*Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

 SELYA, Circuit Judge. This appeal arises out of an SELYA, Circuit Judge. 

unwanted intrusion by a rabid mongoose into the opulent environs

of a posh luxury hotel. During its sojourn, the animal bit a

guest. The guest sued, but to no avail; the district court

entered summary judgment in the hotelier's favor. See Woods- 

Leber v. Hyatt Hotels of P.R., Inc., 951 F. Supp. 1028 (D.P.R. 

1996). We affirm.

I. THE MONGOOSE ATTACK AND ITS SEQUELAE I. THE MONGOOSE ATTACK AND ITS SEQUELAE

 Defendant-appellee Hyatt Hotels of Puerto Rico, Inc.

(Hyatt) owns and operates the Cerromar Beach Hotel (the hotel) in

Dorado, Puerto Rico. The hotel occupies a picturesque oceanfront

setting. Its verdant grounds are bordered on the west by a

mangrove swamp which is under the protection of the

Commonwealth's Department of Natural Resources. On the far side

of the swamp lies Lakeside Villas, a residential subdivision

which was being built at the time material hereto. Hyatt has no

financial or other proprietary interest in the development of the

subdivision.

 On April 10, 1995, at approximately 5:00 p.m.,

plaintiff-appellant Lynne Woods-Leber, a guest, was sunbathing

near the hotel's pool. Suddenly (and without any apparent

provocation) a wild mongoose scurried into the pool area and bit

her. Because the mongoose carried rabies, Woods-Leber underwent

a series of painful inoculations.

 A few days after the attack, the hotel hired an

exterminator, Pest Management International (PMI), to implement a

 2

mongoose control program. PMI set several baited traps and

captured fifteen mongooses in a week's time.1 PMI concluded that

the most likely explanation for the infestation was that

mongooses living in the mangrove swamp had been disturbed by the

construction activity at Lakeside Villas and had migrated

eastward onto the hotel's grounds. The traps were left in place

on the premises.

 In due season, Woods-Leber invoked diversity

jurisdiction, 28 U.S.C. 1332(a) (1994), and sued Hyatt in

Puerto Rico's federal district court.2 Her suit sought damages

for personal injuries under local law. Hyatt denied

responsibility and, following a period of discovery, moved for

brevis disposition, supporting its motion with a number of 

affidavits and declarations. The plaintiff opposed the motion

but made only one evidentiary proffer: her husband's conclusory

recitation of his suspicion that a temporary food preparation and

storage area which had been installed near the pool functioned as

  

 1The plural of "mongoose" is a matter of some debate in
lexicographic circles. See, e.g., Webster's Ninth New Collegiate 
Dictionary 767 (1989) ("mongoose . . . n, pl mongooses also 
mongeese . . . ."). Having noted the debate, however, we choose
not to enter it. Thus, while we use the term "mongooses"
throughout, we express no opinion on which plural noun is
linguistically preferable.

 2Woods-Leber's husband, Anthony Leber, joined as a co-
plaintiff. Inasmuch as his claim is derivative, we treat the
appeal as if Woods-Leber were the sole plaintiff and appellant.
Of course, our decision disposes of Anthony Leber's claim as
well.

 3

a mongoose magnet.3

 On December 30, 1996, the district court granted

Hyatt's motion. The court concluded, in substance, that Hyatt

could not be held strictly liable because it had not exerted any

control over the mongoose, and that it could not be held liable

in negligence because it could not reasonably have been expected

to foresee the mongoose attack. See Woods-Leber, 951 F. Supp. at 

1039. This appeal followed.

II. THE SUMMARY JUDGMENT STANDARD II. THE SUMMARY JUDGMENT STANDARD

 Summary judgment is appropriate when the record shows

"no genuine issue as to any material fact and . . . the moving

party is entitled to a judgment as a matter of law." Fed. R.

Civ. P 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 

242, 247 (1986). The genuineness requirement signifies that a

factual controversy "must be sufficiently open-ended to permit a

rational factfinder to resolve the issue in favor of either

side." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 

735 (1st Cir. 1995). The materiality requirement signifies that

the factual controversy must pertain to an issue which "might

affect the outcome of the suit under the governing law." Morris 

v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994). 

 Like the nisi prius court, we must evaluate the summary

judgment record in the light most flattering to the nonmovant,

drawing all reasonable inferences in that party's favor. See 

  

 3The gist of Leber's statement is reprinted in the district
court's opinion. See Woods-Leber, 951 F. Supp. at 1033. 

 4

Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995). 

Despite this advantage, however, the party opposing summary

judgment cannot simply rest on "conclusory allegations,

improbable inferences, and unsupported speculation." Medina- 

Munoz v. R. J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 

1990). To the contrary, at least with respect to issues on which

she bears the burden of proof, the nonmovant must identify

properly substantiated facts sufficient to establish a

trialworthy issue. See Morris, 27 F.3d at 748; Kelly v. United 

States, 924 F.2d 355, 358 (1st Cir. 1991). 

 Appellate review of an order granting summary judgment

is plenary. See Coyne, 53 F.3d at 457; Morris, 27 F.3d at 748. 

III. ANALYSIS III. ANALYSIS

 The substantive law of Puerto Rico governs the

liability question in this diversity action. See Erie R.R. Co. 

v. Tompkins, 304 U.S. 64, 78 (1938); Daigle v. Maine Med. Ctr., 

Inc. 14 F.3d 684, 689 (1st Cir. 1994). The plaintiff makes two 

claims under that law. We consider them sequentially.

 A. The Article 1805 Claim. A. The Article 1805 Claim. 

 Article 1805 of the Civil Code, P.R. Laws Ann. tit. 31,

 5144 (1992), imposes strict liability on the possessor or user

of an animal for any damages which the animal causes. See 

Serrano v. Lopez, 79 P.R.R. 922, 927 (1957). In order to prevail 

on an Article 1805 claim, a plaintiff must show, at a bare

minimum, that the defendant owned, possessed, or used the wild

animal. See Ferrer v. Rivera, 56 P.R.R. 480, 482 (1940); 

 5

Redinger v. Crespo, 18 P.R.R. 106, 111 (1912). This customarily 

involves a showing that the defendant exercised control over the

animal. See P.R. Laws Ann. tit. 31, 1480 (1993). 

 The district court ordered summary judgment on this

count, holding that Woods-Leber failed to present any evidence

tending to show that Hyatt controlled the rabid mongoose. See 

Woods-Leber, 951 F. Supp. at 1035. We agree. A person cannot 

control an animal of which he is completely unaware. Here, the

uncontradicted evidence indicates that Hyatt had no inkling of

the mongoose's existence, had no reason to suspect that mongooses

were lurking nearby, and received as jolting a surprise as Woods-

Leber when the mongoose struck. In the utter absence of any

evidence of either knowledge or control, the district court

properly entered summary judgment on the Article 1805 claim.

 The plaintiff endeavors to avoid this predictable

result by arguing that a symbiotic relationship existed between

Hyatt and the mongoose population in the mangrove swamp. She

pins this rather exotic theory to a suggestion that Hyatt must

have benefitted from the mongooses' natural affinity for

devouring snakes and rodents, and that this benefit is legally

tantamount to control. This argument is woven entirely from the

gossamer strands of speculation and surmise. The record is

devoid of any evidence that mongooses patrolled the perimeters of

the hotel's grounds, performing pest control functions. And,

moreover, the argument is unaccompanied by any meaningful

 6

citation to applicable legal authority.4 In sum, this argument

is factually barren, legally bankrupt, and altogether

insufficient to breathe life into the plaintiff's Article 1805

claim.

 B. The Article 1802 Claim. B. The Article 1802 Claim. 

 Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31,

 5141, imposes liability on any person or entity which, by his,

her, or its negligent acts or omissions, causes harm or damage.

In broad perspective, Puerto Rico law defines negligence as the

failure to exercise due diligence to avoid foreseeable risks.

See Coyne, 53 F.3d at 459; Malave-Felix v. Volvo Car Corp., 946 

F.2d 967, 971-72 (1st Cir. 1991).5 To recover on a negligence

theory, a plaintiff suing for personal injuries under Article

1802 must establish (1) a duty requiring the defendant to conform

to a certain standard of conduct, (2) a breach of that duty, (3)

proof of damage, and (4) a causal connection between the damage

and the tortious conduct. See Sociedad de Gananciales v. 

Gonzalez Padin, 17 P.R. Offic. Trans. 111, 125 (1986). These 

requirements cannot be satisfied unless the plaintiff proves,

inter alia, that the injury was reasonably foreseeable (and,

thus, could have been avoided had the defendant acted with due
  

 4The lower court perspicaciously observed that this argument
was "not merely novel, but . . . perilously close to the
frivolous." Woods-Leber, 951 F. Supp. at 1035 n.5. 

 5In a premises case a showing of negligence under Puerto
Rico law ordinarily requires a demonstration of the owner's or
occupier's actual or constructive knowledge of the harm-causing
condition. See Mas v. United States, 984 F.2d 527, 530 (1st Cir. 
1993).

 7

care). See Coyne, 53 F.3d at 459-60. 

 The plaintiff contends that, under Puerto Rico law, a

hotel-keeper owes its guests a heightened duty of care and

protection. The law so provides. See, e.g., Mejias-Quiros v. 

Maxxam Property Corp., 108 F.3d 425, 427 (1st Cir. 1997); Coyne, 

53 F.3d at 458; Pabon-Escabi v. Axtmayer, 90 P.R.R. 20, 29 

(1964). Nevertheless, a hotel-keeper is not an insurer of its

guests' well-being. See, e.g., Goose v. Hilton Hotels, 79 P.R.R. 

494, 499 (1956) (holding that a hotelier is liable for a guest's

fall on hotel premises only if the hotelier knew or should have

known of a preexisting dangerous condition). Consequently,

notwithstanding the heightened duty of care and protection, the

hotel-keeper is not liable for harm unless the harm is reasonably

foreseeable. See Coyne, 53 F.3d at 460-61. 

 In this case, the linchpin question is whether it was

reasonably foreseeable at the time and place in question that a

mongoose would attack a guest (for, without a foreseeable harm,

Hyatt could not have breached its duty of care by failing to

implement a mongoose control program before the attack). See id. 

at 460. The district court answered this question in the

negative. See Woods-Leber, 951 F. Supp. at 1039. We think that 

Judge Dominguez got it right.

 The evidence as to knowledge is telling. On this

point, the record permits only one conclusion: that Hyatt had no

knowledge, actual or constructive, either of the mongooses'

existence or of the incipient danger that they presented, at any

 8

time before the attack. The hotel personnel most directly

involved in the matter (such as the head grounds keeper and the

chief of security) submitted affidavits which made plain that a

mongoose had never before been seen on the hotel premises; that

no one at the hotel knew of the presence of mongooses in the

mangrove swamp or otherwise in the vicinity; and that, prior to

the assault on Woods-Leber, no wild animal of any kind had ever

bitten any hotel guest. By the same token, there was no evidence

from which a factfinder could conclude, without rank speculation,

that the temporary food preparation and storage area presented

any hazard or that Hyatt should have known the inauguration of a

construction project near the mangrove swamp portended an influx

of wild animals. Indeed, several previous construction projects

had been undertaken near the swamp without incident. Finally,

there was no evidence either that a non-rabid mongoose,

unprovoked, was likely to bite a supine sunbather, or that rabies

was prevalent in the area.

 We do not mean to imply that, merely because a rabid

mongoose had never before invaded the premises and bitten a

guest, the attack could not have been foreseen. See generally 

Pabon-Escabi, 90 P.R.R. at 25 (explaining that "the requirement 

of foreseeability [does not require] that the precise risk or

consequences have been foreseen"). If, say, an occupier of

premises disregards a known general danger, or omits a precaution

regularly taken by prudent persons similarly situated, a first

attack might well be foreseeable (and, thus, actionable). See 

 9

Coyne, 53 F.3d at 460; see also State v. Francis, 635 A.2d 762, 

769 n.11 (Conn. 1993) (holding that liability does not require

specific foreseeability); Stevens v. Des Moines Indep. Community 

Sch. Dist., 528 N.W.2d 117, 120 (Iowa 1995) (same); Pimentel v. 

Roundup Co., 666 P.2d 888, 891 (Wash. 1983) (same). But here, 

the plaintiff offered no evidence to support a finding of

foreseeability, electing instead to rely on the defendant's

affidavits and declarations.6 We have warned before, and today

reiterate, that parties who permit the movant to configure the

summary judgment record do so at their peril. See Kelly, 924 

F.2d at 358.

 We need go no further. As the district court correctly

stated, "[t]he normal rule is that a person does not have a duty

to prevent an attack upon another . . . by wild animals." Woods- 

Leber, 951 F. Supp. at 1036 (citations omitted). While the rule 

admits of exceptions, the plaintiff in this case adduced no

evidence which sufficed to bring the mongoose attack within any

of those exceptions. Since a hotel-keeper, like any other owner

or occupier of premises, cannot be held liable for that which it

cannot reasonably foresee, the lower court did not err in

granting Hyatt's motion for summary judgment.
  

 6This presents a marked contrast to the cases on which
Woods-Leber relies. See, e.g., Tormos-Arroyo v. Department of 
Ed., 96 J.T.S. 34, 806 n.2 (1996) (plaintiffs submitted 
deposition testimony suggesting foreseeability); J.A.D.M. v. 
Plaza Carolina Shopping Ctr., 93 J.T.S. 26, 10,435 (1993) 
(plaintiff submitted statistical evidence showing past incidence
of crimes in the area); Elba v. University of P.R., 125 P.R. Dec. 
294, 306 (1990) (plaintiff submitted cartographic evidence
indicating known high-risk areas).

 10

 Affirmed. Affirmed. 

 11