69 P.3d 889 (2003)
117 Wash.App. 99
STATE of Washington, Respondent/Cross Appellant,
v.
Jeffrey B. PAYNE, Appellant/Cross Respondent.
No. 27254-7-II.
Court of Appeals of Washington, Division 2.
May 28, 2003.
*891 Joanne E. Dantonio, Stenberg Law Office, Tacoma, WA, for Appellant.
Pamela Beth Loginsky, Washington Assoc. of Prosecuting Atty., Olympia, WA, Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.

*890 PART PUBLISHED OPINION
ARMSTRONG, J.
Jeffrey Payne appeals his first degree child molestation conviction and life sentence as a persistent offender. He argues that the sentencing judge improperly counted a Canadian conviction as one strike, considering it comparable to Washington's first degree child molestation. Payne also claims a number of trial court errors, including that (1) the court erred in admitting his statement to the police and admitting the victim's hearsay statements, (2) the prosecutor committed misconduct, (3) his counsel was ineffective, (4) the evidence was insufficient to support the verdict, and (5) the court lacked jurisdiction because the State failed to prove that the crime occurred in Washington. The State cross appeals, arguing that the trial judge should have considered Payne's Canadian conviction record in sentencing.
The State concedes that under a recent Supreme Court decision, the court erred in considering the Canadian conviction as a strike. Accordingly, we vacate the sentence and remand for resentencing. Otherwise, we find no error and affirm.

FACTS
Jeffrey Payne babysat his girlfriend Jennifer Simon's daughter, C.A.S., for a weekend. Eight-year-old C.A.S. awoke to Payne touching her between her legs under her panties. Payne said he would give her five dollars not to tell anyone and that he would kill her if she did tell. A few days later, when Payne was helping Jennifer's sister, Rachael Simon-Cole, move, Simon-Cole saw Payne leaning over her daughter, C.D.C., with a screwdriver in his hand, touching her labia. When confronted, Payne claimed that she jumped on his back and scratched herself on a screwdriver in his back pocket.
The State charged Payne with molesting the two girls. The jury convicted him of first degree child molestation against C.A.S., but it acquitted him as to C.D.C. The trial judge found that one of Payne's Canadian convictions was comparable to Washington's child molestation statute and sentenced him to life imprisonment without the possibility of parole *892 under the two-strike provision of Washington's Persistent Offender Accountability Act (POAA).
Payne contends that the trial court should have suppressed statements he made to police after he invoked his right to remain silent. He also argues prosecutorial misconduct, ineffective assistance of counsel, improper admission of child hearsay, insufficient evidence to support the verdict, and lack of jurisdiction.
In its cross appeal, the State argues that the trial court erred in refusing to consider Payne's Canadian conviction record for purposes of either a three-strike life sentence or an exceptional sentence.

ANALYSIS

I. Sentencing Issues
A. Out-of-State Convictions and POAA
Payne argues that his current conviction for first degree child molestation is not a second strike for purposes of the Persistent Offender Accountability Act (POAA). Former RCW 9.94A.030(29)(b) (2000). Payne was twice convicted under Canadian law for sexual assault. The Supreme Court has recently held that the POAA for sex offenders (two strikes) does not include prior convictions that are not specifically listed in the statute. State v. Delgado, 148 Wash.2d 723, 63 P.3d 792 (2003). Since Payne's Canadian sexual assaults are not specifically listed in the two-strike statute, the State concedes that his current sentence cannot stand. We agree and, accordingly, vacate the sentence and remand for resentencing.
B. State's Cross Appeal
The State argues that the trial court erred when it refused to consider Payne's Canadian criminal history either for purposes of the three-strike statute,[1] former RCW 9.94A.030(29)(a), or as a basis for an exceptional sentence. The State also urges us to find that on remand, the trial court can give Payne an exceptional sentence based on future dangerousness, vulnerable victim, and abuse of trust. Although the State argued before the trial court for an exceptional sentence based on these factors, it does not discuss in briefing before us future dangerousness, vulnerable victim, or abuse of trust. Accordingly, we discuss only whether the trial court properly excluded Payne's Canadian criminal history. State v. Johnson, 119 Wash.2d 167, 170, 829 P.2d 1082 (1992).
1. Admissibility of Documents on Payne's Canadian Conviction No. 40354C3
The trial judge used Payne's Canadian Conviction No. 40354C3, sexual assault, as one strike under the two-strike statute. Although the State concedes that the conviction can not be counted under the two-strike statute, it correctly contends that the trial court can consider the conviction on remand under the three-strike statute or as an unscored offense that would support an exceptional sentence. Payne argues that the trial court should not have considered the conviction because the State did not lay a proper foundation.
The State must prove the defendant's criminal history by a preponderance of the evidence. RCW 9.94A.500(1). While the best evidence of a prior conviction is a certified copy of the judgment, the State may also introduce "other comparable documents of record or transcripts of prior proceedings." State v. Ford, 137 Wash.2d 472, 480, 973 P.2d 452 (1999). A court may consider a foreign indictment and information, but it should be aware that facts and allegations in the foreign record that do not directly relate to the elements of the charged offense may be unreliable. State v. Morley, 134 Wash.2d 588, 606, 952 P.2d 167 (1998).
Although the State's burden is easily met, it must at least introduce "evidence of some kind to support the alleged criminal history." Ford, 137 Wash.2d at 480, 973 P.2d 452. The facts on which the trial court relies at sentencing must have some basis in the *893 record. Ford, 137 Wash.2d at 482, 973 P.2d 452.
On Conviction No. 40354C3, the State introduced evidence of: the warrant, information, and sentence; the transcript of Payne's plea and submissions; and the warrant of committal. Only the transcript contains information about the facts underlying the conviction. Payne contends that the transcript is inadmissible because it was not certified. The State concedes that Payne challenged all of his prior Canadian convictions in the trial court. Thus, the State had to present evidence sufficient to prove the conviction by a preponderance of the evidence. State v. Cabrera, 73 Wash.App. 165, 169, 868 P.2d 179 (1994).
Authentication is a threshold requirement designed to assure that evidence is what it purports to be. 5C K. TEGLAND, WASH. PRAC., EVIDENCE § 900.2, at 175; § 901.2 at 181-82. The State satisfies ER 901, which requires that documents be authenticated or identified, if it introduces sufficient proof to permit a reasonable juror to find in favor of authenticity or identification. State v. Danielson, 37 Wash.App. 469, 471, 681 P.2d 260 (1984). "Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." United States v. Jimenez Lopez, 873 F.2d 769, 772 (5th Cir.1989).
Exhibit 12 was signed by the court transcriber, who certified that it was a true and accurate transcript. Canadian crown counsel Ron Parsons testified that he arranged to have the transcript made, and that he would regularly rely on similar transcripts as crown counsel. But he did not know whether the court transcriber was certified; nor did he personally know whether the transcript was accurate. Exhibits 11 (record of proceedings and endorsement of information) and 13 (warrant of committal for conviction of sexual assault) support the authenticity of Exhibit 12. All three exhibits have the same name and cause number. Exhibits 11 and 12 indicate the same hearing date and judge. Exhibits 12 and 13 list the same indictment information and the same victim; the transcript in Exhibit 12 includes Payne's admission of guilt regarding that victim. Parsons also testified extensively about the authenticity of Exhibits 11 and 12. The combined effect of this evidence is similar to that in Jimenez Lopez, where a court document that could not be self-authenticated was admitted based on evidence including a signature, testimony of the person who requested the document, and "internal indicia of reliability within the document itself." Jimenez Lopez, 873 F.2d at 772. We conclude that the signatures and handwriting on the documents, coupled with Parson's testimony, provide sufficient proof for the court to find in favor of authenticity. The court properly admitted Exhibits 11-13.
2. Constitutional Validity of Payne's Canadian Conviction No. 34121
The trial court refused to consider Conviction No. 34121, ruling that it did not meet Washington's constitutional standards. The State cross appeals this ruling.
The sentencing court may not consider a conviction that is constitutionally invalid on its face. State v. Ammons, 105 Wash.2d 175, 187-88, 713 P.2d 719 (1986). Criminal defendants have a right to a jury trial under both the Washington Constitution and the U.S. Constitution. U.S. CONST. amend. VI.; WASH. CONST. art. I, § 21. But under Canadian law, Payne did not have a right to a jury trial on Conviction No. 34121, which is listed on page 3 of Exhibit 1. Thus, the conviction is constitutionally invalid and the trial court properly refused to consider it at sentencing. See State v. Herzog, 48 Wash. App. 831, 834, 740 P.2d 380 (1987) (conviction by a two-person jury was facially invalid and trial court correctly refused to consider it in sentencing).
3. Exhibit 1Payne's Canadian Criminal History
The State contends that the trial court abused its discretion by rejecting Exhibit 1, page 3, which listed Payne's criminal convictions. It claims that the court rejected the document because no one testified about how the document was created, and it argues *894 that no authority supports the court's ruling. But the court articulated other reasons as well.
The trial court admitted pages 1 and 2 of State's Exhibit 1; these pages contained the cover sheet and Payne's fingerprints. But the trial court excluded, for lack of proper authentication, page 3 of the exhibit, which was a list of Payne's prior Canadian convictions. The court reasoned that (1) Parsons, crown counsel who testified in support of the State's argument for admission, was not the custodian of the record and did not know the source of the information contained on the record; (2) the document was certified but not in accordance with ER 902's requirements for foreign documents; (3) the document itself warns that it is not a positive identification of Payne; and (4) no record custodian testified to explain the source of the information, where the document came from, or how it was compiled; nor did the State present any circumstantial evidence of how it was prepared.
Because Payne challenged the State's representations of his criminal history, the State was required to prove it by a preponderance of the evidence. State v. Manussier, 129 Wash.2d 652, 682, 921 P.2d 473 (1996); State v. Mitchell, 81 Wash.App. 387, 390, 914 P.2d 771 (1996). The State argues that Exhibit 1, page 3 is admissible under ER 901 and ER 902. It contends that it met its burden of proof by presenting the certified criminal history, live testimony that the document is of the type relied on in Canadian courts to prove a defendant's criminal history, and cross-verification by other documents and Payne's fingerprints.
ER 902 requires certification by particular office-holders before a foreign document is self-authenticated. ER 902(c). The document was certified by a sergeant with the Royal Canadian Mounted Police (RCMP). But this office is not one named in ER 902. The document was not certified by any of the particular office-holders listed in the rule. Thus, the trial court properly refused to admit the document under ER 902.
ER 901 requires "authentication or identification as a condition precedent to admissibility." ER 901(a). The proponent must show that the document in question is what the proponent claims it is. ER 901(a). Because the proponent must make only a prima facie showing of authenticity, ER 901 is met if the proponent shows enough proof for a reasonable fact-finder to find in favor of authenticity. Danielson, 37 Wash.App. at 471, 681 P.2d 260.
The State implies that the document is admissible under ER 901(b)(1) because Parsons had seen it before and knew that it was "what it ... claimed to be." Resp. br. at 16; ER 901(b)(1). But the State cites cases where the witness had seen the offered document before and could, therefore, verify its authenticity. Although Parsons testified that he used similar documents to resolve disputes in Canadian courts about a defendant's prior criminal history, he had no independent or personal knowledge about Payne's prior convictions or this particular document.
The State then mentions that documents can be authenticated if a witness testifies that the handwriting is similar to the purported author's handwriting. ER 901(b)(2). But Exhibit 1 is typed; this subsection does not apply.
The State next argues that the document can be authenticated by circumstantial evidence because it was received in the mail in reply to the witness's request and because it was found in Payne's file. Washington law allows authenticity or identification by circumstantial evidence. ER 901(b)(4); 5C K. TEGLAND, WASH. PRAC., EVIDENCE § 901.9, at 188 (1999).
A federal court has held that authenticity can be established by the document's contents (appearance, contents, substance) and the fact that the document was produced in response to a discovery request. McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928-29 (3rd Cir.1985). In another federal case, the court held that because a probation form was found in the defendant's probation file, the jury had a rational basis to connect the form to the defendant. United States v. Inserra, 34 F.3d 83, 90 (2nd Cir.1994).
These cases are distinguishable. The defendant in Inserra challenged the documents by claiming they were not linked to him. Inserra, 34 F.3d at 90. An officer who was personally familiar with the defendant testified *895 and "specifically connected" the documents to the defendant. Inserra, 34 F.3d at 90. And the circumstantial evidence in McQueeney was significantly stronger than here. McQueeney signed and dated the documents, they included his personal U.S. Merchant Mariners Document Number, and they were specific, regular, and official in appearance. McQueeney, 779 F.2d at 929. McQueeny himself produced the documents in response to a discovery request. McQueeney, 779 F.2d at 929. And the information contained in the records was not widely known; this supported the claim that the documents were what they were purported to beMcQueeney's records. In contrast, no one verified the documents here with his or her personal knowledge. Nor did the documents contain information that was specific, detailed, and difficult to discover, as in McQueeney.
More importantly, we review a trial court's decision on authenticity for an abuse of discretion. State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997). A court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State v. Cunningham, 96 Wash.2d 31, 34, 633 P.2d 886 (1981) (quoting State v. Blight, 89 Wash.2d 38, 41, 569 P.2d 1129 (1977) (quoting State v. Sponburgh, 84 Wash.2d 203, 210, 525 P.2d 238 (1974))). The trial court heard arguments from both parties on the authenticity of this document. While some circumstantial evidencethe document appears on RCMP paper, was sent to Parsons in response to his request, and was apparently found in Payne's filesupported the document's authenticity, the court was not satisfied with the level of proof. In particular, the court had concerns about where the criminal history information came from, how it was compiled, and who compiled it. Ultimately, the court was not satisfied that the document accurately set forth Payne's criminal history. And although another court may have been satisfied with the State's evidence on authentication, we can not say the court abused its discretion by concluding that the State had not shown the document to be what it purported to be. Thus, the trial court did not err in rejecting page 3 of Exhibit 1.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HUNT, C.J., and QUINN-BRINTNALL, J.
NOTES
[1] Unlike the two-strike statute, the three-strike statute allows the court to consider a comparable foreign conviction. Former RCW 9.94A.030(29).